UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HAROLD VERLEY,

                             Plaintiff,                  02 Civ. 1182 (PKC)

            -against-

                                           MEMORANDUM
                                         AND ORDER

DR. LESTER N. WRIGHT, Chief Medical Officer and
Associate Commissioner of the New York State
Department of Correctional Services, et. al.,

                          Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

          Plaintiff Harold Verley, proceeding pro se, brings this action pursuant to 42

U.S.C. § 1983 against Dr. Lester N. Wright, Dr. Carl J. Koenigsmann and Dr. Steven Weinstein,

each of whom is employed by the New York State Department of Corrections ("DOCS") as a

physician (collectively, the "State Defendants").  Also named as defendants are Corrections

Physician Services, Inc., ("CPS") and Prison Health Services, Inc., ("PHS") (collectively, the

"Corporate Defendants").  Verley suffers from hepatitis C and contends that defendants have

violated his rights under the Eighth and Fourteenth Amendments by withholding treatment with

deliberate indifference to his medical needs.  Plaintiff seeks injunctive, declaratory and monetary

relief.

          The State and Corporate Defendants now move for summary judgment in their

favor.  I conclude that plaintiff has failed to administratively exhaust his remedies as to all claims

against the State Defendants, with the exception of his claim against defendant Wright for denial

of interferon/ribavirin treatment and his claim against defendant Koenigsmann for denial of the

referral to a nutritionist and hepatologist.  As to defendant Wright, plaintiff has raised a triable

issue of fact on the deliberate indifference claim against him; however, I conclude that the claim

is barred by the doctrine of qualified immunity.  As to defendant Koenigsmann, plaintiff has

failed to come forward with evidence which would permit a reasonable factfinder to conclude

that he acted with deliberate indifference to plaintiff's medical needs.  Plaintiff's claims for

money damages against the State Defendants in their official capacities are also barred by

sovereign immunity.  Plaintiff's claims for declaratory and injunctive relief are deemed moot

because of his transfer from the Green Haven Correctional Facility ("Green Haven") to a

different facility and because he has received the treatment he initially sought.

 The Corporate Defendants do not assert that the exhaustion requirement applies to

them.  However, plaintiff has failed to come forward with evidence which would permit a

reasonable factfinder to find in his favor as against the Corporate Defendants.

 For the reasons more fully explained below, summary judgment is granted

dismissing plaintiff's claims.

BACKGROUND

 A. <u>Procedural Background</u>

 Defendants, with the exception of Wright and Koenigsmann, moved pursuant to

Rule 12(b)(1), (2), and (6), Fed. R. Civ. P., to partially dismiss the Complaint. (Docket # 13, 20,

28)  The motions were referred to Magistrate Judge Debra C. Freeman.

 In a Report and Recommendation dated January 22, 2004 (the "R&R"),

Magistrate Judge Freeman recommended that the Court dismiss all claims against defendants

Glenn S. Goord, Charles E. Greiner, Donald Stevens, Dr. Thomas Rush, Dr. Michael Antonelle,

Vincent Marrone, Dr. Rosensweig and Phillip Marron, but deny the motion to dismiss claims

against defendants CPS and PHS; the Magistrate Judge also recommended denial of Verley's motion to amend certain portions of the Complaint. (Docket # 90)  Despite twice seeking extensions of his time to object to the R&R, no objections were received from plaintiff.  The Corporate Defendants timely filed objections.  On June 2, 2004, I issued an Order which adopted in its entirety the R&R of Magistrate Judge Freeman. (Docket # 94)

        In their submissions on the present motion, the Corporate Defendants have annexed a "Second Amended Complaint" ("SAC"). (Corp. Defs. Rule 56.1 Stmt. Exh. A) Plaintiff sought and received permission to file a SAC, (Docket # 107) but the SAC does not appear to have been filed with the Clerk.  On the motions, all parties direct their arguments to the SAC and I will therefore consider it the operative pleading and deem it to have been filed.

        A. Background

        Since 1990, plaintiff has been incarcerated within DOCS.  In late 1996, physicians at Green Haven, where plaintiff was then located, noted elevated enzyme levels in plaintiff's blood. (Johnson Dec. Exh. E)  Following testing in 1997, plaintiff was told that he was likely infected with the hepatitis C virus ("HCV"). (Verley Dec. ¶ 34)  HCV is a chronic, viral liver disease. (Verley Brief in Opp. Exh. R; Johnson Dec. Exh. I-1)  No broadly effective treatment for HCV exists, although the most successful treatments are a regimen of interferon, ribavirin or some combination thereof. (Verley Brief in Opp. Exh. N; Johnson Dec. Exh I-1)

        Plaintiff contends that his "medical provider," a physician assigned to provide medical services to inmates, told him that he should "consider" undergoing a liver biopsy, the most accurate method of testing for HCV, in order to confirm the diagnosis.  Plaintiff claims that he was denied a biopsy for over a year, despite having obtained several referrals for one from his medical provider at Green Haven. (Verley Exh. I at 12-17)  Verley underwent a liver biopsy on

October 6, 1998, which resulted in a finding of "Chronic Hepatitis, Consistent with Hepatitis C,

Grade 2, Stage 2." (Verley Exh. I at 20)  On or about December 26, 1998, Dr. Thomas Rush, an

Infectious Disease Control Specialist at Green Haven, ordered that plaintiff begin combination

interferon/ribavirin ("IR") therapy immediately.[1] (Verley Dep. 41-42; Defs. 56.1 ¶ 15)

On February 12, 1999, plaintiff was denied participation in an IR therapy program

by defendant Wright, the Associate Commissioner and Chief Medical Officer of DOCS, on the

basis that plaintiff did not satisfy the preconditions set forth in the 1998 preliminary protocol (the

"1998 Protocol") which governed treatment of HCV within DOCS. (Johnson Dec. Exh. I-4, Q;

Johnson Dec. Exh. A, Wright Dec. ¶ 8)  The 1998 Protocol was the precursor to the Clinical

Practice Guideline on Hepatitis C (the "Guideline") which went into effect on March 31, 1999.

(Johnson Dec. Exh. I-5)  The 1998 Protocol and the Guideline provide that treatment must not be

given to anyone with "evidence of active substance (alcohol or drug) use during the past two

years." (Johnson Exh. I-4 ¶ 2; Exh. I-5 at 3)

Plaintiff was found guilty of two disciplinary violations relating to two separate

instances of drug use which occurred in November of 1998. (Johnson Dec. Exhs. K, J)  The first

incident occurred on November 13, 1998 when a search of plaintiff's cell resulted in the

confiscation of five small bags of a substance later determined to be marijuana. (Johnson Dec.

Exh. K)  Plaintiff was charged with, and pled guilty to, drug possession in violation of prison

regulations. (Id.)  Prior to this incident, plaintiff had been twice tested for drugs and tested

negative both times. (Johnson Dec. J "Hearing Transcript" at 17)  As a result of this disciplinary

violation, plaintiff was placed on a list of inmates subject to random drug testing which he

---

[1] In plaintiff's "Declaration in opposition to the defendant's motion for summary judgment," plaintiff states that it was a Dr. Malvarosa, not Dr. Rush, who referred him for IR therapy.  In other filings by plaintiff, he asserts that Dr. Rush ordered the referral.  Although contradictory, it is immaterial which physician actually issued the referral as it is undisputed that plaintiff was referred for IR therapy.

underwent on November 24, 1998. (Johnson Dec. Exh. J)  The test resulted in a finding that

Verley's urine was "positive for contraband," namely cannabinoid. (Id.)  A second test

confirmed the first result. (Id.)  In response to the test results, plaintiff was charged with, and

pled guilty to, use of a controlled substance in violation of prison regulations.  The fact that

plaintiff had not been free from drug use for two years as the 1998 Protocol required caused

Wright to deny him IR therapy. (Johnson Dec. Exh. Q)

        Plaintiff filed a grievance challenging the denial of IR therapy, pursuing the claim

through the DOCS grievance procedure and culminating in an Article 78 proceeding in New

York Supreme Court. (Verley Aff. Exh. L)  In a Decision and Order dated May 1, 2000, Justice

Judith A. Hillery concluded "that Dr. Wright demonstrated a deliberate indifference to

petitioner's serious medical needs" by denying him IR therapy. (Id. at 5)  She ordered that

plaintiff be immediately enrolled in IR therapy.

        Thereafter, plaintiff was admitted to IR therapy but did not respond favorably to

the treatment.  In August 2001, Rush recommended that plaintiff be given a new type of

Interferon treatment called Pegelated Interferon ("PegIntron"), upon its approval by the Food and

Drug Administration ("FDA"). (Verley Dep. 57)  Plaintiff alleges that PegIntron therapy was

approved by the FDA but, despite his repeated requests, he was denied access to it by Wright.

(SAC ¶ 24; Verley Dep. 58)  Plaintiff contends that the initial denial of IR therapy, delay in his

receipt of medical treatment and the denial of PegIntron, combined to result in his suffering

additional ills, including loss of hearing. (Verley Dep. 49; 51-52)  In addition to claiming that

Wright acted with deliberate indifference toward plaintiff's specific medical condition, he alleges

that Wright improperly failed to develop a tracking system or other procedure to monitor inmates

with chronic illnesses (the "Monitoring Claim"). (SAC ¶ 25; Verley Dep. 61-63)

Plaintiff also contends that in May 2001, Koenigsmann, Facility Health Services Director at Green Haven, improperly denied him access to the services of a hepatologist, dermatologist and nutritionist on the basis that he had already seen a gastroenterologist ("GI"). (Verley Dep. 72, 74-75; Verley Dec. 61-62)  He claims that Koenigsmann denied him a follow-up appointment with the GI, despite a referral for the appointment from his medical provider. (Verley Dep. 75; Johnson Dec. Exh. E "Def" 234)  Plaintiff contends that the real reason for the denial of medical treatment by Koenigsmann was a desire to have plaintiff transferred to another facility.

In October 2001, plaintiff complained to Dr. Steven Weinstein, an outside medical consultant at Green Haven, about back pain he believed was attributable to an old gun shot wound and "HCV related neuropathy." (SAC ¶ 35)  Following testing, Weinstein determined that Verley had no apparent nerve damage.  Plaintiff asserts that Weinstein reached this conclusion by ignoring prior tests which showed nerve damage. (Pl. "Statement of Disputed Factual Material Issues of Fact" ¶ 4)  Plaintiff contends that Weinstein's report "was based on personal opinion, not sound medical information." (Id.)  When plaintiff questioned the diagnosis, Weinstein allegedly became verbally abusive toward plaintiff. (Id. ¶ 25; Verley Dep. 76)  Plaintiff alleges that Weinstein deliberately disregarded any indication that plaintiff may have experienced pain or nerve damage "out of spite" and personal dislike of plaintiff. (SAC ¶ 36)

Defendant CPS is a corporate entity which in February 1998 contracted with DOCS to provide off-site review of referrals of DOCS inmates to medical specialists.[2] (CPS 56.1 Stmt. ¶¶ 20-21)  According to the terms of the contract, CPS was to "provide or arrange for the

---

[2] Defendant PHS is the successor to CPS which was the entity active at the time of plaintiff's allegations, CPS 56.1 Stmt. ¶ 20.  I will therefore discuss the allegations as they relate to CPS.  The SAC refers to CPS as "Corrections Physician Health Services, Inc." but it appears from defendants' 56.1 statement that the correct name is Corrections Physician Services.

provision of all medically necessary specialty physician services . . . and to manage the delivery of hospital service to the [inmate] Population . . . ." (CPS 56.1 Stmt. ¶ 23, Exh. I §1)  As part of its services, CPS engaged in a process of preadmission certification to determine "whether the inpatient care proposed by a physician is appropriate and required" and conducted reviews of patient care. (CPS 56.1 Exh. I § 3.G)  If CPS declined to permit a patient to be seen by a specialist, despite a referral from the patient's physician, DOCS could require a review by a committee of two DOCS representatives and two CPS representatives, all of whom are physicians or health professionals. (Id.)  CPS did not provide direct care to DOCS inmates. (CPS Stmt. ¶ 34)  Verley appears to contend that CPS was, at least partially, responsible for denying him both the IR therapy and the PegIntron treatments and that these decisions by CPS were motivated by its desire to save money. (Verley Dep. 86; 100-02; SAC ¶ 37)  As a result of the denial of the referrals to see specialists, plaintiff contends that he has suffered a "compromised liver," hearing difficulties and joint and muscle pain. (Verley Dep. 119)

DISCUSSION

    A.    <u>Summary Judgment Standard</u>

        Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant

Case 1:02-cv-01182-PKC-DCF   Document 168   Filed 09/27/07   Page 8 of 26

to relief in its favor as a matter of law. <u>Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed. R. Civ. P.  In raising a triable issue of fact, the nonmovant carries only "a limited burden of production," but neverthe-less "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004) (quoting <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." <u>Allen v. Coughlin</u>, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); <u>accord</u> <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. <u>See</u> Rule 56(c), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate. <u>Id.</u>

Plaintiff has been served with the requisite "Notice to Pro Se Litigants Opposing Summary Judgment" required by Local Rule 56.2.  A <u>pro se</u> party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a <u>pro</u>

se plaintiff's claims are subject to a final dismissal. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.")  However, a party's pro se status does not alter the obligation placed upon the party opposing summary judgment to come forward with evidence demonstrating that there is a genuine dispute regarding material fact. Miller v. New York City Health & Hosp. Corp., 2004 WL 1907310, *9 (S.D.N.Y. Aug. 25, 2004).

      B.     Claims Against the State Defendants

          a.   Failure to Exhaust

      The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e et seq., was enacted in an effort to address the large number of prisoner complaints filed in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (The PLRA is intended to "reduce the quantity and improve the quality of prisoner suits.")  The PLRA does not itself create any substantive rights but "claims covered by the PLRA are typically brought under 42 U.S.C. § 1983 . . . ." Jones v. Bock, _ U.S._, 127 S.Ct. 910, 919 (2007).  Under the provisions of the PLRA, "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement is intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25.  The Supreme Court has made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life." Id. at 532.  Within the Second Circuit, failure to exhaust administrative remedies is an affirmative defense and the defendant therefore bears the burden of proving that claims have not been exhausted. See Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  Where a complaint

contains claims which are exhausted and claims which have not been properly exhausted, the Court must dismiss only the unexhausted claims and not the complaint in its entirety. <u>Bock</u>, 127 S.Ct. at 924.

DOCS has a well-established, three-step, administrative procedure for inmate grievances called the inmate grievance program ("IGP"). N.Y. Correction Law § 139 (2003). First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") at his facility. 7 N.Y. Codes R. & Reg. ("NYCRR") § 701.5(a)(1).  Absent mitigating circumstances, in order to be timely, a grievance must be filed within 21 days of the alleged incident. 7 NYCRR § 701.5(a)(1).  If the IGRC is unable to resolve the dispute to the satisfaction of the grievant, a hearing must take place within 16 days of the IGRC's receipt of the grievance. § 701.5(b)(2)  After receiving a response from the IGRC, an inmate has seven days in which to appeal to the superintendent of his facility. § 701.5(c)(1).  If the IGRC does not respond to an inmate's initial grievance, the inmate may still appeal to the superintendent. § 701.8.  Finally, the inmate may appeal the decision of the superintendent to the Central Office Review Committee ("CORC") within seven days of receiving the decision. § 701.5(d)(1)(i).  The CORC "consists of the deputy commissioner and counsel, deputy commissioner for correctional facilities, deputy commissioner for program services, deputy commissioner for administrative services, and the deputy commissioner and chief medical officer, or their designees expressly authorized to act for them." § 701.5(d)(2)(i).  An inmate may attend a hearing or appeal a grievance unaided or aided by a member of staff or an other inmate. 7 NYCRR § 701.6(a).

The State Defendants contend that plaintiff has failed to exhaust his administrative remedies in regard to the claims against Weinstein, the claim against Koenigsmann as it pertains to the dermatology referral, the claims against Wright in relation to

plaintiff's biopsy and denial of HCV retreatment with PegIntron and the Monitoring Claim. Plaintiff's claims against Wright relating to the denial of IR therapy and against Koenigsmann for declining to permit him to see a nutritionist and hepatologist are indisputably exhausted.

Plaintiff appears to contend that the PLRA applies only to administrative remedies "as are available" and there are "no remedies available to exhaust any medical issue" which renders such an issue "ungrievable."  Plaintiff also claims that physicians cannot be compelled to comply with the final determination regarding the IGP complaint and thus a grievance proceeding cannot afford a meaningful remedy.  Further, plaintiff contends that because of the "diversity of opinions amongst District Court Judges, as to whether the exhaustion requirement, as applied by DOCS, is more of a punative mechanism or fair mechanism for redress of wrongful acts . . . there are material issues which should go before trial." (Pl. Brief in Op. at 21)

Verley acknowledged at his deposition that he did not file a grievance in regard to the Monitoring Claim and there is no evidence in the record that such a grievance was filed. (Verley Dep. 64-65)  Accordingly, the Monitoring Claim is unexhausted and is dismissed.

In regard to Verley's claims against Koenigsmann as they relate to the dermatology referral, Verley testified at his deposition that he did submit a grievance relating to that claim. (Verley Dep. 72)  However, there is no record of such a grievance being filed. (Johnson Dec. Exh. P)  While Verley did file a grievance against Koenigsmann regarding the denial of a referral to a hepatologist and nutritionist, he did not include the dermatological referral in the grievance and that claim is therefore unexhausted. (Johnson Dec. Exh. G)  In response to defendants' evidence, plaintiff failed to come forward with evidence that he

exhausted his dermatological claim. His conclusory assertion that he exhausted the claim, without more, is insufficient to raise a triable issue of fact.

As to claims against Wright, it appears from the record that plaintiff only filed a grievance relating to the denial of the referral for IR therapy. (Johnson Dec. Exh. H, P) Accordingly, any other claim against Wright, including those claims relating to the delay in plaintiff's biopsy or the denial of PegIntron, has not been exhausted.[3] Plaintiff's claims against Weinstein are also unexhausted as plaintiff failed to file any grievance relating to Weinstein's alleged deliberate indifference to either his gunshot wound or his "HCV related neuropathy."

This is not a case where the claim is perceived to be unexhausted simply because plaintiff did not name in his grievance a party who he has now sued. See Block, 127 S.Ct. at 923. These are claims which have not been the subject of grievance proceedings.

In Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit summarized its holdings in a series of cases as requiring that a three-part inquiry be undertaken when a prisoner counters a defendant's argument that he or she failed to exhaust. First, the court considers whether administrative remedies were "available" to the prisoner. Id. (citing Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004)). Second, the court inquires whether the defendants failed to preserve a non-exhaustion argument by failing to raise the issue or preserve it. Hemphill, 380 F.3d at 868 (citing Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004)). Third, the court looks to whether the defendant's own actions inhibited the inmate's exhaustion of remedies, and if so, whether the actions estopped one or more defendant from raising non-

---

[3] Even had plaintiff's claim regarding the delay in his receipt of a biopsy been exhausted, there is no evidence in the record that Wright was personally involved in plaintiff's biopsy or its timing. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Rather, the determination was made by plaintiff's treating physicians. Plaintiff may not under § 1983 pursue a theory of respondeat superior to hold Wright liable for actions of plaintiff's treating physicians. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).

exhaustion. Hemphill, 380 F.3d at 868 (citing Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004)).  If, after considering these three questions, the court finds that administrative remedies were available to the plaintiff, and that defendants are not estopped and have not forfeited their non-exhaustion claims, but that the plaintiff still failed to exhaust, the court considers whether plaintiff plausibly alleges "special circumstances" that justify the prisoner's failure to comply with the exhaustion requirements. Id.

Here, plaintiff has failed to demonstrate that the administrative remedies were not, in fact, "actually available to him." Hemphill, 380 F.3d at 686.  It is sheer speculation that meaningful relief, such as a transfer to another correctional facility with different medical staff and access to other medical facilities, could not have been afforded.  Moreover, the Supreme Court has noted that the exhaustion requirement is a legislative mandate that has several important purposes, beyond the direct availability of relief to the prisoner.  Woodford v. Ngo, 126 S.Ct. 2378, 2385-88 (U.S. June 22, 2006).  DOCS has a meaningful grievance procedure which was fully available to plaintiff.

The State Defendants have preserved their exhaustion argument.  Exhaustion arguments were timely raised on the motion to dismiss and in both the Answers to the SAC and the original Complaint. (Doc. # 22, 116 ¶ 32)

Finally, there is no evidence in the record that defendants have inhibited plaintiff from administratively exhausting his remedies or used coercive pressure to induce plaintiff not to file a grievance.  Rather, the record before the Court indicates that plaintiff was able to file at least seven grievances during his incarceration at Green Haven. (Johnson Dec. Exh. P)  There is no evidence of undue delay in the handling of plaintiff's grievances.  See Manos v. Decker, 2005 WL 545215 (S.D.N.Y. Mar. 7, 2005).  The grievance filed in relation to the denial of IR therapy

was filed on February 18, 1999 and finally decided by CORAC less than two months later on April 7, 1999. (Johnson Dec. Exh. H)  Similarly, the grievance relating to the referrals for a nutritionist and hepatologist was filed on August 8, 2001 and decided by the Superintendent less than a month later. (Johnson Dec. Exh. G) There is also no evidence of "special circumstances" which would excuse plaintiff's failure to exhaust his administrative remedies.

Accordingly, the Monitoring Claim, all claims against Weinstein, the dermatology claim against Koenigsmann and all claims against Wright with the exception of the claim relating to the initial denial of IR therapy are dismissed on exhaustion grounds.

b.   The Eleventh Amendment

In prohibiting suits against states, the Eleventh Amendment confirms two presuppositions of constitutional proportion: "first, that each State is a sovereign entity in our federal system; and second, that [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,'" Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (alteration in original; citations and quotations omitted).  "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability.  Rather, it provides an immunity from suit." Federal Maritime Com'n v. South Carolina State Ports Authority, 535 U.S. 743, 766 (2002).  Sovereign immunity may be abrogated by Congressional action, see Seminole, 517 U.S. at 55, or a state may waive its immunity provided it does so in an unequivocal fashion, see Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238 n.1 (1985), CSX Transportation, Inc. v. New York State Office of Real Property Services, 306 F.3d 87, 95 (2d Cir. 2002).  Section 1983 does not abrogate a state's Eleventh Amendment immunity and there has been no waiver for section 1983 claims on the part of the State of New York. See Quern v. Jordan, 440 U.S. 332 (1979).  Absent waiver or abrogation, sovereign immunity

extends to all agencies and officials sued in their official capacity because the State is the real

party in interest. See F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994); Kentucky v. Graham, 473

U.S. 159, 169 (1985).  Suits asserting official capacity claims against employees of DOCS and

its facilities have been held to be subject to the State's Eleventh Amendment immunity. See, e.g.,

Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (Commissioner of DOCS and officials of

Attica).

       The SAC reflects that all of plaintiff's claims against the State Defendants are

asserted against them in their individual and official capacities. (SAC ¶¶ 9-12)  Plaintiff's claims

for injunctive or declaratory relief and his claims against the State Defendants in their personal

capacities are not barred by the Eleventh Amendment. See id. at 101-02 (citing Hafer v. Melo,

502 U.S. 21, 27-31 (1991); Kostok v. Thomas, 105 F.3d 65, 69 (2d Cir. 1997)).  Plaintiff's

claims for money damages against the State Defendants in their official capacities are dismissed.

      c.  Claims for Injunctive and Declaratory Relief

       Subject matter jurisdiction requires that there be an actual controversy "at all

stages of review, not merely at the time the complaint is filed." Prins v. Coughlin, 76 F.3d 504,

506 (2d Cir. 1996) (citing Preiser v. Newkirk, 422 U.S. 395, 402 (1975)).  According to the

Second Circuit, "an inmate's transfer from a prison facility generally moots claims for

declaratory and injunctive relief against officials of that facility." Salahuddin v. Goord, 467 F.3d

263, 272 (2d Cir. 2006)(citing Prins, 76 F.3d at 506).  While the issue of mootness was not raised

by any party, the Court may nonetheless consider it sua sponte. See Prins, 76 F.3d at 506.[4]

       Plaintiff seeks "a preliminary injunction permanently enjoining defendant's [sic],

their agents, employees, assigns, and other persons acting in concert with them or their behalf"

---

[4] The issue of mootness was considered by Magistrate Judge Freeman in her R&R, adopted by this Court on June 2, 2004.  However, because Magistrate Judge Freeman's R&R was addressed to the original complaint and plaintiff again seeks declaratory and injunctive relief in the SAC, I will consider the issue of mootness anew.

from "making plaintiff's Hepatitis C treatment contingent upon other factors than sound medical

practice and science" as well as compelling the State Defendants to "promulgate new Hepatitis C

treatment guidelines consistent with prevailing professional norms, establish and maintain an

adequate pain management regiment . . . and to establish a uniformity and systematic system of

prison health care." (SAC "Wherefore Clause" A-C)  During the events giving rise to this case,

plaintiff was incarcerated at Green Haven.  On February 18, 2003, Verley was transferred to the

Fishkill Correctional Facility ("Fishkill"). (Doc. # 50)  On April 30, 2003, Verley was again

transferred to the Auburn Correctional Facility ("Auburn"). (Doc. #74)  He was then transferred

to Marcy Correctional Facility ("Marcy"), Doc. #140, then to Mohawk Correctional Facility

("Mohawk"), Doc. #146, and finally back to his current location at Marcy, Doc. #158.  To the

extent that plaintiff seeks injunctive and declaratory relief directed at officials at Green Haven,

those claims are now moot as plaintiff is no longer incarcerated at the Green Haven facility.

Thus, the claim for injunctive and declaratory relief against Koenigsmann and Weinstein, who

are based at Green Haven, is dismissed.

The claim for injunctive and declaratory relief is not moot against Wright who is a

state-wide DOCS official.  However, to the extent that the claims for injunctive and declaratory

relief seek to have Wright implement a "uniform and systematic" method of tracking and treating

inmates suffering from HCV, those claims are part of the Monitoring Claim which is

unexhausted and, hence, are dismissed.

Plaintiff also seeks an injunction enjoining Wright from "making plaintiff's

Hepatitis C treatment contingent upon other factors than sound medical practice and science . . .

."  As a result of the Article 78 proceeding before Justice Hillery, plaintiff received a full course

of IR therapy.  Plaintiff has failed to come forward with any evidence that there is "a likelihood

that he . . . will be injured in the future," in respect to the receipt of IR therapy or any other

medical treatment. Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).  Any

threat of injury to plaintiff is, at this time, merely hypothetical, which is insufficient to warrant

injunctive or declaratory relief. See O'Shea v. Littleton, 414 U.S. 488, 494-96 (1974) (injunctive

relief); Irish Lesbian and Gay Organization v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998)

(declaratory relief).  Summary judgment is granted dismissing all of plaintiff's claims against

Wright seeking declaratory and injunctive relief.

> C.     Verley's Eighth Amendment Claims Against the State Defendants and the
>        Corporate Defendants

According to established law, "the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment," See

Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Cruel and Unusual Punishments Clause of

the Eighth Amendment requires that prison officials ensure that inmates receive adequate

medical care. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  However, "not every lapse in

medical care is a constitutional wrong." Salahuddin, 467 F.3d at 279.  An inmate does not state a

cognizable Eighth Amendment claim by merely disagreeing with prison officials about what

constitutes appropriate medical care. See Ross v. Kelly, 784 F.Supp. 35, 44 (W.D.N.Y. 1992),

aff'd, 970 F.2d 896 (2d Cir. 1992).  Rather, a prison doctor's judgment regarding treatment is

presumed valid absent proof that it was "such a substantial departure from accepted professional

judgment, practice or standards as to demonstrate that the person responsible actually did not

base the decision on such judgment." Richardson v. Blanchette, 2006 WL 496010, *7 (D. Conn.

Mar. 1, 2006)(citation and quotation omitted).

In the context of the denial of medical care, the actions of a prison official violate

the Eighth Amendment only where two requirements, one objective and one subjective, are

satisfied. <u>Farmer</u>, 511 U.S. at 834.  The alleged deprivation of adequate medical care must be objectively "sufficiently serious." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  In determining whether a depravation of medical care is "sufficiently serious," courts consider whether the inmate was, in fact, deprived of medical care and whether there was harm, or is likely to be harm, from the alleged depravation. <u>See</u> <u>Farmer</u>, 511 U.S. at 844-47; <u>Helling</u>, 509 U.S. at 32-33.

   The second requirement for an Eighth Amendment violation, the subjective component of the inquiry, focuses upon whether the prison official acted with a sufficiently culpable state of mind. <u>Wilson</u>, 501 U.S. at 300.  A culpable state of mind may be demonstrated by proof that a prison official acted with deliberate indifference to an inmate's health needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  Deliberate indifference may be shown where the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Farmer</u>, 511 U.S. at 837.  Therefore, a prison official must be subjectively aware of the risk to the inmate that the official's conduct creates; it is insufficient for a plaintiff to demonstrate that a prison official was incorrect in his belief that an inmate is not at risk or that the belief itself was unsound under the circumstances. <u>See</u> <u>Salahuddin</u>, 467 F.3d at 281 ("The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere. Thus, even if objectively unreasonable, a defendant's mental state may be nonculpable.").

   a. <u>Claims Against Wright</u>

   The State Defendants concede that HCV is a serious medical condition. (Mem. at 16); <u>Johnson v. Wright</u>, 412 F.3d 398 (2d Cir. 2005).  In regard to harm caused by the denial of medical treatment for his HCV, Verley has asserted that he suffered hearing loss and was told by

Rush that his HCV had worsened by virtue of the initial denial of IR therapy. (Verley Dep. 39-41)   Therefore, interpreting all facts in plaintiff's favor, I conclude that he has satisfied the first prong of the Eighth Amendment inquiry.   The question now becomes whether Wright acted with a "sufficiently culpable state of mind," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), in denying plaintiff IR therapy.

In Johnson v. Wright, 412 F.3d 398, the Second Circuit reversed the district court's grant of summary judgment to defendants, including defendant Wright, in a case where the plaintiff, an HCV sufferer, contended that defendants had acted with deliberate indifference toward his medical needs by denying him ribavirin against the recommendation of his treating physicians. See 412 F.3d at 404-05.   The evidence was that on a single occasion, the plaintiff had tested positive for marijuana and on this basis was denied the drug regimen despite the unanimous view of his treating physicians. See id.   The Second Circuit concluded that a reasonable jury could conclude that Wright and the other defendants had acted with a sufficiently culpable state of mind "by reflexively following the [Hepatitis C Primary Care Practice] Guideline's substance abuse policy" to deny plaintiff ribavirin therapy. Johnson, 412 F.3d at 406.

Here, Wright acted against the recommendation of plaintiff's treating physician, Rush, who had recommended plaintiff for IR therapy.   In deciding to deny plaintiff IR therapy, Wright stated that there was "no detectable progression of plaintiff's Hepatitis C" although the "basis" on which he denied Verley's treatment was that "Verley had not been free from illicit drug abuse for a period of two years" as required under the 1998 Protocol.[5] (Wright Dec. ¶¶ 8, 17-18)   Wright stated that Verley's drug use, specifically the two 1998 disciplinary citations for marijuana possession and use, caused him to conclude that Verley was "not committed to taking

---

[5] While "[a]n individual defendant is not liable under § 1983 absent personal involvement," Rivera v. Goord, 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003), plaintiff has produced sufficient evidence that Wright was personally involved in the denial of the referral for IR therapy. See McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004).

personal responsibility for assisting in his proposed course of treatment" and might "hinder or negatively impact the treatment." (Wright Dec. ¶¶ 16, 18)  However, there is no indication in the record that there were any other legitimate compliance concerns regarding Verley's ability to adhere to the IR therapy treatment regimen.  Verley has persistently sought treatment for his HCV.  Further, when he was placed on a 24 week IR therapy treatment schedule which failed to yield results, Verley requested to continue on the 48 week treatment cycle, again evincing his commitment to receiving treatment despite potential side effects of IR therapy. (Verley Dep. 57)

This case presents facts different from those in <u>Johnson</u> in that Wright reviewed plaintiff's medical file prior to denying him IR therapy.  However, both here and in <u>Johnson</u>, Wright denied an inmate medical treatment in reliance on prison protocol without consideration of the degree to which the inmate was non-compliant with the protocol.  Here, there is evidence that would permit a reasonable factfinder to conclude that Wright did not act with a sufficiently culpable state of mind in denying plaintiff IR therapy.  However, in view of <u>Johnson</u>, I conclude that a reasonable factfinder could find in Verley's favor.  There is no evidence in the record before the Court that Wright balanced plaintiff's medical and disciplinary record against the recommendation of plaintiff's treating physician and then exercised his considered medical judgment to deny plaintiff IR therapy.  Further, there is no indication that Wright even believed that he had the discretion to depart from the 1998 Protocol.  Indeed, the language of the 1998 Protocol is mandatory, stating that there "<u>must</u> be no evidence of active substance (alcohol or drug) use during the past two years" in order for an inmate to receive IR therapy. (Johnson Dec. Exh. I-4)(emphasis added)  Applying <u>Johnson</u> to these facts, there is a triable issue of fact as to whether Wright, in denying plaintiff IR therapy, acted with deliberate indifference to plaintiff's medical needs.

b. <u>Claims Against Koenigsmann</u>

The inquiry as to Koenigsmann turns on whether he acted with a "sufficiently culpable state of mind" in denying Verley consultations with specialists, including a nutritionist and hepatologist. These consultations were recommended in response to plaintiff's request by Dr. Bendheim, plaintiff's medical provider, on May 31, 2001. (Johnson Dec. Exh. E at DEF 234) While Koenigsmann did not follow Verley's treating physician's recommendation of a referral, he did so on the basis of his own medical judgment rather than in reflexive compliance with any prison medical policy. Koenigsmann denied plaintiff's request to see a specialist on the basis that plaintiff was seeing both Infectious Disease and Gastrointestinal Specialists. (<u>Id.</u>; Koenigsmann Dec. ¶ 10) He also relied on the fact that "there was no indication in [Verley's] medical records that the Infectious Disease consultant felt [Verley] needed to see a heptaologist," that Verley's condition was stable and that "there was no available retreatment approved by the FDA for patients" in Verley's circumstance who had failed to respond to IR therapy. (Koenigsmann Dec. ¶ 10) It was Koenigsmann's "professional judgment" that there was "no sound medical basis for granting Verley's May 31, 2001, request" to see a hepatologist. (<u>Id.</u> ¶¶ 10-11) Similarly, Koenigsmann concluded that, because Verley's weight had been managed without consulting a nutritionist, <u>Id.</u> ¶¶ 17-20; Johnson Dec. Exh. E at 244, Verley's health did not require a nutritional consultation. (Koenigsmann Dec. ¶ 22)

Plaintiff has failed to raise a triable issue of material fact as to the second prong of the deliberate indifference inquiry as to his claims against Koenigsmann. There is substantial evidence in the record that Koenigsmann reviewed plaintiff's file and made an independent medical determination that it was unnecessary for Verley to visit a specialist in light of the care that he was already receiving. <u>Cf.</u> <u>Johnson</u>, 412 F.3d at 404. Disagreement with a physician's

decision, whether that decision is erroneous or not, is insufficient to support a finding of deliberate indifference.  See United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970)("[D]ifference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.").  There is insufficient evidence in the record before me to permit a reasonable factfinder to conclude that Koenigsmann knew of or disregarded an excessive risk to plaintiff's health or safety.  See Farmer, 511 U.S. at 837. Summary judgment is therefore granted dismissing the claims against Koenigsmann.

          c.   Claims Against the Corporate Defendants

Plaintiff contends that "CPS and PHS' delay and denial of medical treatment to serious medical need constitutes a violation of the Eighth and Fourteenth Amendment[s] to the United States Constitution." (SAC ¶ 46)  Although it is unclear from the face of the SAC precisely what medical treatment plaintiff alleges that he was denied by CPS and PHS, it appears that Verley contends that CPS denied him the PegIntron treatment and alternative treatment for HCV, specifically milk thistle. (Verley Dec. 102; 107)  However, Verley concedes that no referral for a consultation regarding PegIntron was ever submitted to CPS. (Verley Dep. 108) There is no evidence in the record that a referral for alternative HCV treatment was ever submitted to CPS. While plaintiff contends that there are documents which "would have established the allegations" (Verley Dep. 102), plaintiff was offered a reasonable opportunity to conduct discovery and those documents are not part of the record before the Court.  Therefore, even assuming that the first prong of the deliberate indifference inquiry were satisfied, there would be no basis on which a reasonable factfinder could conclude that the subjective component of the deliberate indifference inquiry is satisfied.  Summary judgment is therefore granted to the Corporate Defendants.

D.    Qualified Immunity

The State Defendants contend that even if plaintiff has evidence of the denial of a constitutional or federally protected right by a state actor, the state actor is protected by the defense of qualified immunity.  I need only consider the defense as to Wright, as it is only as to him that the claim would otherwise survive.  "The doctrine of qualified immunity protects state actors sued in their individual capacity from suits for monetary damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Baskerville v. Blot, 224 F.Supp.2d 723, 737 (S.D.N.Y. 2002)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In considering whether defendant is protected by qualified immunity, a court "must first determine whether the facts alleged, taken most favorably to plaintiffs, demonstrate a violation of a constitutional right.  Having already determined that they do, [the court] must turn to the second prong of the qualified immunity analysis and determine whether the defendants' actions violated clearly established constitutional rights of which a reasonable person would have known." Zieper v. Metzinger, 474 F.3d 60, 67 (2d Cir. 2007)(internal citations omitted).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The Second Circuit has stated that the right of prisoners to be free from deliberate indifference to serious medical needs under the Eighth Amendment is a clearly established right. See LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).

On a motion for summary judgment, dismissal of claims against a defendant on grounds of qualified immunity is appropriate only if "the evidence is such that, even when it is viewed in the light most favorable to the plaintiff [ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." McKenna v. Wright, 2004 WL 102752, *8 n.9 (S.D.N.Y. Jan. 21, 2004)(citation omitted), aff'd, 386 F.3d 432 (2004).  A government official's actions are objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995) (citing Malley, 475 U.S. at 341).  Whether or not a government official acts reasonably is determined by the state of the law applicable at the time of the alleged acts. See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).  Therefore, if reasonable medical professionals could disagree as to whether Wright's actions were unlawful under the then-applicable law, summary judgment in favor of Wright is appropriate.  Lennon, 66 F.3d at 421.  The "ultimate legal determination whether . . ." a government actor " . . . should have known he acted unlawfully is a question of law better left for the court to decide." Id.

In a qualified immunity analysis, the court should first define the clearly established right which is allegedly violated by a defendant's conduct.  The defense of qualified immunity was not before the Second Circuit in Johnson v. Wright, 412 F.3d at 406 n.4.  Thus, it was not necessary for the Court to define a right as clearly established within the meaning of Saucier v. Katz, 533 U.S. 194, 202 (2001), and other cases.  It may be tempting to read Johnson as holding that there is a clearly established right not to be denied HCV treatment based solely upon isolated instances of drug use during a specific time period and in contravention of the

recommendations of treating physicians, but I am not convinced that is a fair reading of the case
which arose in the context of a single reported instance of marijuana use.  If I were to assume
that the foregoing is the clearly established right, then it was not established until <u>Johnson</u>
which was not decided until 2005, long after the events at issue in this case.  To avoid doubt, I
will also examine qualified immunity through the lens of the broader right which was clearly
established at the time of the operative events – a right to be free from inadequate medical care.

   The Court must next determine whether a rational factfinder could conclude that
it was objectively reasonable for Wright to believe that by following the 1998 Protocol, he acted
in a fashion that was not deliberately indifferent to plaintiff's rights.  At the time that Wright
denied plaintiff IR therapy, a reasonable prison official would have known that "inadequate
medical care can give rise to an Eighth Amendment constitutional violation where prison
officials are deliberately indifferent to an inmate's serious medical needs." <u>See</u> <u>Estelle v.
Gamble</u>, 429 U.S. 97, 106 (1976).  However, a reasonable prison medical official would not
necessarily have known that denying plaintiff treatment in reliance on the 1998 Protocol would
constitute deliberate indifference to plaintiff's medical needs.  The 1998 Protocol required that
candidates for IR therapy have been drug-free for two years because consuming drugs which are
metabolized through the liver may adversely impact treatment and drug abuse raises concerns
that a participant may not be compliant with the conditions of treatment. (Wright Dec. ¶ 10;
Johnson Dec. Exh. I-4)  According to defendants' expert, Mark Korsten, the guidelines in place
in 1998-1999 "reflect the generally accepted standards of care in relation to the diagnosis and
treatment of Hepatitis at that time," including "the then-prevailing view that substance abuse,
whether or not involving intravenous drug use, warranted withholding of drug therapy for
Hepatitis C . . . ." (Johnson Dec. Exh D, Korsten Dec. ¶ 3-4)  Wright's treatment of plaintiff, in

addition to being in compliance with the applicable prison regulations, did not result in any "departure from accepted standards of care . . . ." (Id., tab D-2 ¶ 6) Plaintiff has presented no evidence to the contrary. Because reasonable prison medical officials could have concluded that Wright's denial of plaintiff's referral for IR therapy pursuant to the policy then in effect at Green Haven was not unlawful, Wright is protected by qualified immunity.

CONCLUSION

Defendants Wright, Koenigsmann, Weinstein, Corrections Physician Services and Prison Health Services motions for summary judgment are granted. All other claims having been previously dismissed, the Clerk shall enter judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 27, 2007